CIVIL ACTION NO. 2:97-CV-20-DE

WILLIAM TRUE, JR. AND CATHY TRUE,   )
   )
          Plaintiffs,   )
   )
VS.   )
   )
PLEASANT CARE, INC., et al,   )
   )
          Defendants.   )

## DEFENDANTS' REQUEST FOR JURY INSTRUCTIONS

NOW COMES the Named Defendants in this action by and through the undersigned counsel and pursuant to Rules 49 and 51 of the F.P.Civ.P and Local Rule 25.02(b), EDNC, and without prejudice to Rule 50 Motions for Judgment as a matter of law, and submits the following Requested Jury Instructions prior to trial based upon this Court's request and the forecast evidence at this time. Defendants may have additional further requests upon receipt of Plaintiffs' Request for Jury Instructions, the Court's rulings on pending motions and after the hearing of the evidence at the trial of this case as well as upon the Court's rulings during the trial of this case.

I.      5TH CIRCUIT PATTERN JURY INSTRUCTIONS:

      A.      Preliminary Instructions

      1.1

      B.      Precautionary Instructions

            2.1      First Recess

            2.3      Stipulated Testimony

            2.4      Stipulations of Fact

            2.5      Judicial Notice

|   | 2.6 | Discontinuance as to Some Parties |
|---|-----|-----------------------------------|
|   | 2.7 | Publicity During Trial |
|   | 2.8 | Bench Conferences and Recesses |
|   | 2.9 | Demonstrative Evidence |
|   | 2.10 | Witness Not Called |
|   | 2.11 | Similar Acts - Precautionary Charge |
|   | 2.12 | Duty to Deliberate |
|   | 2.13 | Instructions on Deliberation |
|   | 2.14 | Bias - Corporate Party Involved |
|   | 2.15 | Clear and Convincing Evidence |
|   | 2.16 | Limiting Instruction |
|   | 2.18 | Impeachment by Witnesses' Inconsistent Statements |
|   | 2.19 | Consideration of the Evidence |
|   | 2.20 | Expert Witnesses |
|   | 2.21 | Burden of Proof, when only Plaintiff has burden |
|   | 2.22 | Use of Notes Taken by Jurors |
|   | 2.23 | Precautionary Instructions on Damages |
|   | 2.24 | Deposition Testimony |
| C. | General Instructions for Charge | |
|   | 3.1 | General Instructions for Charge |
| D. | Miscellaneous Federal Defenses | |
|   | 14.1 | Statute of Limitations |
| E. | Damages | |
|   | 15.1 | Consider Damages Only If Necessary |
|   | 15.2 | Compensatory Damages |
|   | 15.3 | Calculation of Past and Future Damages |

15.4      Injury/Pain/Disability/Disfigurement/Loss of Capacity for Enjoyment of Life

15.5      Aggravation or Activation of Disease or Defect

15.6      Medical Expenses

15.7      Lost Earnings/Time/Earning Capacity

15.8      Spouse's Loss of Consortium and Services

15.10      Property Damage

15.13      Punitive Damages

15.14      Multiple Claims - Multiple Defendants

15.15      Mitigation of Damages

II.     NORTH CAROLINA PATTERN JURY INSTRUCTIONS:

     A.     Preliminary Instructions

100.10      Opening Statement

100.20      Recesses

100.40      Deposition Testimony

100.44      Interrogatories

100.70      Taking of Notes by Jurors

101.05      Function of the Jury

101.10      Burden of Proof and Greater Weight of the Evidence

101.11      Clear, Strong and Convincing Evidence

101.14      Judicial Notice

101.15      Credibility of Witnesses

101.20      Weight of the Evidence

101.25      Testimony of Expert Witnesses

101.30      Testimony of Interested Witnesses

101.32      Evidence - Limitation as to Parties

101.33      Evidence - Limitation as to Purpose

101.35  Impeachment or Corroboration by Prior Statement

101.37  Evidence Relating to the Character Trait of a Witness (including a party) for Truthfulness

101.40  Photograph, Videotape, Motion Picture, X-Ray or Other Pictorial Representations, Map, Models, Charts - Illustrative and Substantive Evidence

101.41  Stipulations

101.42  Request for Admission

101.43  Deposition Evidence

101.45  Circumstantial Evidence

101.50  Duty to Recall the Evidence

101.60  Issues

101.62  Presumptions

101.65  Peremptory Instruction

B. General Negligence Instruction

102.10  Negligence Issue - Burden of Proof

102.11  Negligence Issue - Definition of Common Law Negligence

102.12  Negligence Issue - Definition of Negligence in and of Itself (negligence per se)

102.13  Negligence of Minor Between 7-14 Years of Age

102.14  Negligence Issue - No Duty to Anticipate Negligence of Others

102.15  Negligence Issue - Doctrine of Sudden Emergency

102.16  Negligence Issue - Sudden Emergency Exception to Negligence Per Se

102.19  Proximate Cause - Definition; Multiple Causes

102.20  Proximate Cause - Peculiar Susceptibility

102.26    Proximate Cause - Act of God

102.27    Proximate Cause - Concurring Acts of Negligence

102.28    Proximate Cause - Insulating Acts of Negligence

102.32    Negligence Issue - Breach of Parent's Duty to Supervise Minor Children

102.35    Contentions of Negligence

102.50    Final Mandate - Negligence Issue

102.60    Concurring Negligence

102.84    Negligence - Infliction of Severe Emotional Distress

102.85    Willful or Wanton Conduct Issue (Gross Negligence)

102.86    Willful or Wanton Conduct Issue (Gross Negligence) - Used to Defeat Contributory Negligence

102.90    Negligence Issue - Joint Conduct - Multiple Tort Feasors

C.    General Agency Instructions

103.10    Agency Issue - Burden of Proof - When Principal is Liable

103.15    Independent Contractor

103.50    Agency - Departure from Employment

103.55    Agency - Willful and Intentional Injury Inflicted by an Agent

103.70    Final Mandate - Agency Issue

D.    Contributory Negligence Instruction

104.10    Contributory Negligence Issue - Burden of Proof - Definition

104.25    Contributory Negligence of Minor between 7-14 Years of Age

750.05    Contributory Negligence Issue - Violation of Safety Statute or Ordinance - Negligence Per Se [ for statute and

regulation violations which may be applicable in this case; see current list attached hereto as Exhibit 1]

750.06    Contributory Negligence Issue - Negligence Per Se [for code or regulation violations which may be applicable to statutes in this case; see current list attached hereto as Exhibit 1]

104.35    Contention of Contributory Negligence

104.50    Final Mandate - Contributory Negligence Issue

E.    Summary Instructions

150.10    Jury Should Consider All Contentions

150.12    Jury Should Render Verdict Based on Facts, Not Consequences

150.20    The Court Has No Opinion

150.30    Verdict Must Be Unanimous

150.40    Selection of Foreperson

150.45    Concluding Instructions - When to Begin Deliberations, Charge Conference

150.50    Failure of Jury to Reach a Verdict (if applicable)

150.60    Discharging of the Jury

F.    General Negligence Issue

750.00    Negligence Issue - Definition of Negligence

750.05    Negligence Issue - Violation of Safety Statute or Ordinance - Negligence Per Se

750.06    Negligence Issue - Negligence Per Se [for relevant status and regulations in this case, as determined during trial]

750.07    Negligence Issue - Violation of Voluntarily Adopted Safety Code - Some Evidence of Negligence (if applicable)

6

805.70      Duty of Adjoining Land-Owners - Negligence

G.    Infliction of Emotional Distress

805.60      Intentional or Reckless Infliction of Severe Emotional
               Distress (if applicable)

H.    Nuisance and Trespass

805.00      Trespass to Real Property

805.05      Trespass to Real Property - Damages

805.25      Private Nuisance

I.    Damages (all if applicable)

810.00      Punitive Damages - Issue of Existence of Outrageous or
               Aggravated Conduct

810.01      Punitive Damages - Issue of Whether to Make Award and
               Amount

810.02      Punitive Damages - Issue of Whether to Make Award and
               What Amount (special cases, if applicable)

810.05      Punitive Damages - Liability of Defendant(s)

810.06      Punitive Damages - Issue of Whether to Make Award and
               Amount

810.10      Plaintiff's Personal Injury Damage Issue, Burden of Proof

810.15      Measure of Damages for Personal Injury - In General

810.20      Medical Expenses

810.25      Loss of Earnings

810.30      Pain and Suffering

810.35      Loss of Use of Part of Body

810.42      Permanent Injury

810.43      Damages - Future Worth and Present Value

| 810.49 | Personal Injury Damages - Avoidable Consequences - Failure to Mitigate Damages (also with regard to property damages alleged) |
| 810.50 | Final Mandate - Plaintiff's Personal Injury Damages Issue |
| 810.51 | Final Mandate - Plaintiff's Personal Injury Damages Issue - Per Diem Argument by Counsel |
| 810.80 | Spouse's Claim for Loss of Consortium - Action |
| 810.85 | Spouse's Claim for Loss of Consortium - Issue of Damages |
| 810.87 | Parent's Claim for Negligent Injury to Minor Child - Issue of Damages |
| 810.90 | Damages - Reduction to Present Value |
| 810.91 | Plaintiff's Property Damage Issue, Burden of Proof |
| 810.92 | Measure of Damages to Personal Property |
| 810.93 | Final Mandate - Plaintiff's Property Damage Issue |
| 810.94 | Measure of Damages - Plaintiff's Property Damage Issue - No Market Value - Cost of Replacement or Repair (if applicable) |
| 810.96 | Measure of Damages - Destruction of Personal Items or Personal Property Without Market Value - Recovery of "Actual Value" (if applicable) |

III.     SPECIAL JURY INSTRUCTIONS REQUESTED:

Appropriate section of 33 USC 1311(a). Further, that the jury be instructed "to establish a violation of this section prohibiting discharge of any pollutant into waters of the United States, plaintiffs must prove by a preponderance of evidence that defendants [for each defendant as applicable] have discharged pollutants from a point source into "navigable waters."

8

There are five elements of a private cause of action or citizen's complaint under the Clean Water Act: the plaintiffs have the burden of proof and must prove by the preponderance of evidence standard that each of the five elements exist; (1) a discharge of a "pollutant" as defined; (2) into waters of the United States; (3) from a point source; (4) that the discharge is ongoing at the time of the filing of the action; (5) and notice of intent to sue was served sixty days before filing of the suit. See 33 USC 1311, 1362 and 1365. The Clean Water Act defines a violation as discharge of a pollutant into "navigable waters" and the statute defines navigable waters as "waters of the United States" [33 USC 1362(7)].

To the extent that this Court allows the jury to determine for purposes of the Clean Water Act whether or not a "single operational upset" which leads to simultaneous violations of more than one pollutant parameter, the Defendants would request a single violation instruction pursuant to 33 USC 1319(c)(5) as tailored for effect in a civil case and subsection (d) with regard to civil penalties (although such will likely be determined, if any, by the Court based upon jury's answering of verdict questions of fact). See also, depending upon the Court's determination of questions for the jury, 33 USC 1319(g), as it applies to violations, determining amounts, and the like.

The Clean Water Act defines "pollutant" as dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal and agricultural waste discharged into water. See 33 USC 1362, Definitions, (6).

The term "point source" is defined within the Clean Water Act as follows: any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural storm water discharges and

9

return flows from irrigated agriculture. See 33 USC 1362, Definitions, (14). The term "non-point source" of pollution under the Clean Water Act relates to uncollected run-off water which is difficult to ascribe or attribute to any single polluter.

The Clean Water Act defines the term "person" as an individual, corporation, partnership, association, state, municipality, commission or political subdivision of a state, or any interstate body. 33 USC 1362, Definitions, (5).

The term "navigable waters" is defined within the Clean Water Act as the waters of the United States, including the territorial seas. See 33 USC 1362, Definitions, (7). The term "effluent limitation" is defined with the Act as any restriction established by a state or the administrator on quantities, rates and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance. See 33 USC 1362, Definitions, (11).

The term "discharge of a pollutant" is defined within the Clean Water Act as is the term "discharge of pollutants", each means (A) any addition of any pollutant to navigable waters from any point source, (B) any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft. See 33 USC 1362, Definitions, (12).

The term "discharge" is defined within the Act when used without qualification includes a discharge of a pollutant and a discharge of pollutants. See 33 USC 1362, Definitions, (16). As defined within the Act, the term "pollution" is defined as a means the man-made or man-induced alteration of the chemical, physical, biological and radiological integrity of water. See 33 USC 1362, Definitions, (19).

The law provides that the administrator upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons or to the welfare of person where such endangerment is to the livelihood of such persons and may bring a suit on behalf of the United States in the

10

appropriate District Court to immediately restrain any person causing or contributing to the alleged pollution to stop the discharge of pollutants causing or contributing to such pollution or to take such other action as may be necessary. See 33 USC 1364(a).

A citizen's suit in order to be brought forth must be commenced within five years of the actions giving rise to the alleged violation. See 33 USC 1365 and interpretive case law. The law provides that citizen suits under the Clean Water Act cannot be maintained against past owners of private septic systems even if it is alleged and proved that the system's violation of the Act were continuing when the suits were filed as past owners were not presently violating the Act as required at the time of filing the action.

"Waters of the United States" are defined by regulation as that terms applies to the Clean Water Act. [33 USC 1344; 33 CFR 328.1 et seq.]. For purpose of the Clean Water Act, the term "waters of the United States" is defined as follows: [please see attached subsections and definitions which apply as attached and set forth within Defendants' Deposition Exhibit 25 as previously submitted to the Court.]

Further, definition of "navigable waters of the United States" is defined in regulation 33 CFR 329.1 et seq. as follows: [please read appropriate sections of Definitions of navigable waters of the United States, as applicable to the Clean Water Act as attached hereto.]

With regard to Defendants' claims of Plaintiffs' contributory negligence and negligence per se, please see attached North Carolina Administrative Code Sections dealing with the Plaintiffs' wastewater treatment system and water-well as recently cited within Defendants' Reply to Plaintiffs' Motions in Limine by NCAC title and section number incorporated herein by reference in its entirety.

The Clean Water Act, 33 USC 1319, under enforcement provides that if the administrator finds that a personal entity is in violation of the conditions and limitations within the Act or of a permit as issued by the state pursuant to the Clean Water Act, the administrator shall proceed under his authority by issuing an order requiring compliance

11

with such section or requirement or that the administrator will bring a civil action as lawsuit as by law provided. Also, if the administrator feels based upon the information available to him are so wide-spread that such violations or conditions appear to result from a failure of the state to enforce such permit condition or limitation, the administrator shall notify the state authorities. If the state does not act within the appropriate timeframe within thirteen days after such notice, if any, the administrator shall enforce the permit condition or limitation by issuing an order to comply with such condition or limitation or by bringing a civil action in court. See 33 USC 1319, Enforcement.

The law provides that the wastewater treatment system or septic system of the Pleasant Hill Rest Home under its permitted use did not need to obtain a national pollutant discharge elimination system permit for the ongoing discharge of pollutants as defined by the Clean Water Act. See 33 USC 1342, NPDES.

North Carolina State Law defines "point source pollution" as pollution which enters waters mainly as a result of precipitation and subsequent run-off from lands which have been disturbed by man's activities and includes all source of water pollution which are not required to have a permit in accordance with NCGS 145-21.5.1(c). See 15A NCAC 2B.0202, Definitions, (41). "Wetlands" are defined by North Carolina Law as "waters" and are areas that are inundated or saturated by accumulation of surface or groundwater at a frequency and duration sufficient to support, and that under normal circumstances do support a prevalence of vegetation typically adapted to life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas. Wetlands are classified as waters of the state and are restricted to waters of the United States as defined by 33 CFR 328.3 and 40 CFR 230.3. See NCGS 143-212(6) and 15A NCAC 2B.0202, Definitions, (64).

"Waters" are defined under North Carolina Law as any stream, river, brook, swamp, lake, sound, title estuary, bay, creek, reservoir, waterway or other body or accumulation of water, whether surface or underground, public or private, or natural or

artificial, that is contained in, flows through, or borders upon any portion of this state, including any portion of the Atlantic Ocean for which this state has jurisdiction. See NCGS 143-212(6).

The term "waste" is defined under North Carolina Law to include "sewage" which shall mean water-carried human waste discharged, transmitted and collected from residences, buildings, industrial establishments or other places into a unified sewerage system or arrangement for sewage disposal or a group of such sewerage arrangements or systems, together with such ground, surface, storm or other water as may be present. See NCGS 143-213(18)(a).

The term "effluent standards or limitations" means under North Carolina Law any restrictions established pursuant to this Article on quantities, rates, characteristics and concentrations of chemical, physical, biological or other constituents of wastes which are discharged from any pretreatment facility or from any outlet or point source to waters of the State. See NCGS 143-213(23).

The term "point source" as defined under North Carolina Law as any discernible, confined and discrete conveyance, including, but specifically not limited to, any pipe, ditch, channel, conduit, well, discrete fissure, container, rolling stock or concentrated animal-feeding operation which wastes are or may be discharged to the waters of the State. See NCGS 143-213(24).

Under North Carolina Law, the state has been directed to develop and adopt effluent standards of limitations and waste management practices as it determines necessary to prohibit, abate, or control water pollution. In such effluent standards of limitations and waste management practices provide for such point source or source standards limitations and management practices and prohibitions for waste discharge from any point source or sources. The State and its local County designates are required to enforce these limitations and standards from outlets and point sources which may affect

13

the waters of the state and as are necessary to maintain or enhance the chemical, physical, biological and radiological integrity of the waters. See NCGS 143-215.

However, under North Carolina Law the specific pollution control provisions do not apply to the use of septic systems or wastewater treatment systems approved pursuant to Chapter 130A of the North Carolina General Statutes and do not affect the powers, duties and authority of local health departments regarding sewage disposal. See NCGS 143-215.7.

The Law provides that natural waters may on occasion or temporarily have characteristics outside the normal range established by the State or local County standards. The adopted water quality standards relate to the condition of waters affected by the discharge of sewage, industrial waste or other waste including those from non-point sources and other source of water pollution. Water quality standards will not be considered violated when the values outside the normal range are caused by natural conditions. Where wastes are discharged to such waters, the discharger will not be considered a contributor to substandard conditions provided maximum treatment and compliance with permit requirements is maintained and therefore meeting the established limits beyond the discharger's control. See NCGS 143-214.1; 143-215.3(a)(1);and 15A NCAC 2B.0205.

North Carolina Law provides for fresh surface water quality standards for class C waters, which are defined as all fresh surface waters. This law provides [15A NCAC 2B.0211(e)] that organisms of the coliform group: fecal coliforms, shall not exceed a geometric mean of 200/100ml (MF) count based upon at least five consecutive samples examined during any thirty day period, nor exceed 400/100ml in more than 20% of the samples examined during such period; violations of the fecal coliform standard are expected during rainfall events and, in some cases, this violation is expected to be caused by uncontrollable non-point source pollution; all coliform concentrates are to be analyzed using the membrane filter technique unless high turmidity or other adverse conditions

14

necessitate the tube dilution method; in case of controversy over results the MPN 5-tube dilution technique will be used as the reference method. See 15A NCAC 2B.0211(e).

North Carolina Law provides for fresh surface water quality standards for class WS-1 waters [15A NCAC 2B.0212] which are water quality standards which apply to surface waters within water supply watersheds as a source of water supply for drinking purposes. Such law provides for organisms of the total coliform group not to exceed 50/100ml (MF) count as a monthly geometric mean value in watersheds serving as unfiltered water supplies; and for sewage and industrial waste: none except those specified within subparagraph (2) of this paragraph above or Rule .0104 of this subchapter.

Pursuant to North Carolina statutes and regulations that State and County health agencies are required to identify and reduce health risks to the community and to detect and investigate and prevent the spread of disease including promoting a safe and healthful environment. In that capacity, the Departments of Environmental Health for the State and local County agencies are required to monitor, inspect and supervise on-site domestic sewage facilities. See NCGS 130A-1.1.

Under North Carolina State Law, an "eminent hazard" means a situation that is likely to cause an immediate threat to human life, an immediate threat of serious physical injury, an immediate threat of serious adverse health affects, or serious risk of irreparable damage to the environment if no immediate action is taken. See NCGS 130A-2(3). State and local County health department officials have the right of entry upon the premises of any place where it is necessary to enforce the health and environmental laws of the State and to conduct, search and inspect such premises if any eminent environmental hazard exists and are authorized to take all steps necessary including issuing orders of abatement or institute legal action in a court of law. [NCGS 130A-17-19.] Also, under North Carolina Law, the State and County environmental health representatives have the right to

issue administrative penalties for the violation of the environmental laws of this state. [NCGS 130A-22-23].

Further, in the State of North Carolina, a state laboratory of public health has been established by law and such department is authorized and required to make examinations and provide consultation and technical assistance as the public health may require. [NCGS 130A-88].

The State of North Carolina through its environmental departments and local County health departments have the obligation to oversee and monitor the wastewater treatment systems "or septic systems" used in the State and/or County. [NCGS 130A-333]. Within said law regarding wastewater treatment systems, the following definitions apply: (3)(a) "maintenance" is defined and means normal or routine maintenance including replacement of broken pipes, cleaning or adjustment to an existing wastewater treatment system; (9)(a) "repair" is defined and means the extension, alteration, replacement or relocation of existing components of a wastewater treatment system; (10) "residence" is defined and means a private home, dwelling unit in a multiple family structure, hotel, motel ... institution or any other place where people reside; (12) "septic tank system" is defined and means a subsurface wastewater system consisting of a settling tank and subsurface disposal field; (13) "sewage" means the liquid and solid human body waste and liquid waste generated by water-using fixtures and appliances including those associated with food handling. The term does not include industrial processed wastewater or sewage that is combined with industrial processed wastewater; (14) "wastewater" is defined and means any sewage or industrial process, wastewater discharged, transmitted or collected from a residence, place of business, place of public assembly or other places into a wastewater system; (15) "wastewater system" is defined and means a system of wastewater collection, treatment and disposal in single or multiple components including a privy (outhouse), septic tank system, public or community wastewater system, ... or any other similar system ... used only for human waste. See NCGS 130A-334, Definitions.

16

Under North Carolina Law, all wastewater systems as defined shall be regulated by the department under the rules adopted. [NCGS 130A-335].

North Carolina Law provides that for a residence or place of business to be served by a wastewater system that such must be evaluated by the local health department and improvement permits must issue in compliance with State and local law and regulation. [NCGS 130A-336]. Local health departments are also required by law to issue an authorization for construction authorizing work to proceed or for installation or repair of a wastewater treatment system when it is determined after a field investigation that some additional work is necessary and/or required. [NCGS 130A-336].

Further, North Carolina Law requires that prior to using a system for wastewater treatment and disposal that the local health department must inspect and determine that the system has been installed or repaired in accordance with any conditions or requirements of the improvement permit of the North Carolina statutes and regulations. [NCGS 130A-337]. North Carolina Law provides that any source of wastewater treatment system that makes any outlet into the waters of the state as defined must receive a permit to do so. [NCGS 143-215.1(a)(1)(2)(3)(6)]. However, the law specifically provides that no permit for discharge shall be required under North Carolina Law for a wastewater treatment system as regulated under Article 11 of Chapter 130A of the General Statutes, such as the wastewater treatment system of Pleasant Hill Rest Home. [NCGS 143-215.1(a4).

This the 2nd day of February, 2000.

Gregory A. Wendling
Attorney for Defendants
NC State Bar No. 17743
426 W. Friendly Avenue, Suite A
Greensboro, NC 27401
Telephone:     (336) 274-6001
Facsimile:     (336) 275-2526

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants' Request for Jury Instructions was served upon all counsel of record by facsimile of February 2, 2000, by 1:00PM and by first class mail, postage prepaid and addressed as follows:

Jonathan D. Sasser
Robert A. Meynardie
Attorneys at Law
P. O Box 26507
Raleigh, NC 27611
Facsimile: (919) 828-4254

David W. Daniel, Clerk
US District Court for the EDNC
P. O. Box 25670
Raleigh, NC 27611
Facsimile: (919) 856-4160

The Honorable Alexander B. Denson
United States Magistrate Judge
US District Court for the Eastern District of NC
P.O. Box 25610
310 New Bern Avenue
Raleigh, NC 27611
Facsimile: (919) 856-4389

This the 2nd day of February, 2000.

Gregory A. Wendling
Attorney for Defendants
NC State Bar No. 17743
426 W. Friendly Avenue, Suite A
Greensboro, NC 27401
Telephone:      (336) 274-6001
Facsimile:      (336) 275-2625

249-T1

**EXHIBIT 1 TO DEFENDANTS' REQUEST FOR JURY INSTRUCTIONS**

The regulations which Plaintiffs, according to the record in this case, may themselves have violated with regard to their own water-well system include but are not limited to the following: 15A NCAC 2C.0102(1)(8)(10)(15)(18)(29)(31), Definitions; 2C.0103, Registration; 2C.0105, Permits; 2C.0107, Standards of Construction: Water-Supply Wells, (a)(1)(2)(A)(B)(L)(N)(P)(3)(4)(6)(b)(1)(2)(d)(3)(4)(5)(8)(e)(1)(2)(3)(4)(9)(i)(1)(2)(A)(B)(C)(D)(E)(3); 2C.0108, Standards of Construction: Wells Other Than Water Supply, (a)(c); 2C.0111, Disinfection of Water Supply Wells (relative to construction, maintenance and repairs as delineated); 2C.0112, Well Maintenance: Repair: Groundwater Resources, (a)(b)(c)(d); 2C.0113, Abandonment of Wells, (a)(b)(c)(d); 2C.0116, Designated Areas: Wells Cased to Less than 20 Feet, (a)(c); 2C.0117, Designated Areas: Wells Cased to Minimum Depth of 35 Feet, (a); 2C.0118, Variance, (a)(b). See also Deposition Exhibits cited herein above and particularly Plaintiffs' Deposition Exhibits 28-31, 36 and 38-41.

Further, with regard to the Plaintiffs' own wastewater treatment system or, as commonly known, septic system, the following regulations are applicable to Plaintiffs' own compliance which may indeed affect their alleged contamination as follows: 15A NCAC 18A.1934, Scope; 18a.1935, Definitions, (3)(6)(7)(9)(11)(12)(14)(17)(18)(19)(24)(25)(28)(31)(32)(35)(37)(38)(39)(40)(46); 18A.1937, Permits, (a)(b)(f); 18A.1938, Responsibilities, (a)(b)(c); 18A.1939, Site Evaluation, (a)(b)(c)(d); 18A.1940, Topography and Landscape Position, (a)-(g); 18A.1941, Soil Characteristics, (a)-(b); 18A.1942, Soil Wetness Conditions, (a)-(b); 18A.1945, Available Space, (a)-(d); 18A.1946, Other Applicable Factors; 18A.1947, Determination of Overall Site Suitability; 18A.1948, Site

Classification; 18A.1949, Sewage Flow Rates for Design Units, (a)(b); 18A.1950, Location of

Sanitary Sewage Systems, (a)(1)(6)(12)(15)(B)(16)(b)(d)(3)(6)(7)(i); 18A.1951, Applicability of

Rules, (a)(c); 18A.1955, Design Installation Criteria For Conventional Sewage Systems,

(a)(b)(c)(e)(g)(i); 18A.1956, Modifications to Septic Tank Systems; 18A.1961, Maintenance of

Sewage Systems, (a); 18A.1962, Applicability.

Defendants would request that the above-cited regulations and statutes which apply to

Plaintiffs' own water-well system and wastewater treatment system or septic system be read

and/or instruction to the jury. Further, Defendants would request that this Court instruct pursuant

to the NCPI request herein above that the Plaintiffs are required by law to take reasonably

available steps to maintain their septic and water-well systems as well as assure that such are

constructed in accordance with North Carolina law and regulation and, further, take reasonable

available steps to mitigate their damages as alleged, if any, as required by law.


249-376

# PART 328 - DEFINITION OF WATERS OF THE UNITED STATES

Sec.
328.1 Purpose.
328.2 General scope.
328.3 Definitions.
328.4 Limits of jurisdiction.
328.5 Changes in limits of waters of the United States.

**Authority:** 33 U.S.C. 1344.

## Section 328.1 Purpose.

This section defines the term "waters of the United States" as it applies to the jurisdictional limits of the authority of the Corps of Engineers under the Clean Water Act. It prescribes the policy, practice, and procedures to be used in determining the extent of jurisdiction of the Corps of Engineers concerning "waters of the United States." The terminology used by Section 404 of the Clean Water Act includes "navigable waters" which is defined at Section 502(7) of the Act as "waters of the United States including the territorial seas." To provide clarity and to avoid confusion with other Corps of Engineer regulatory programs, the term "waters of the United States" is used throughout 33 CFR Parts 320-330. This section does not apply to authorities under the Rivers and Harbors Act of 1899 except that some of the same waters may be regulated under both statutes (see 33 CFR Parts 322 and 329).

## Section 328.2 General scope.

Waters of the United States include those waters listed in Section 328.3(a) below. The lateral limits of jurisdiction in those waters may be divided into three categories. The categories include the territorial seas, tidal waters, and non-tidal waters (see 33 CFR 328.4 (a), (b), and (c), respectively).

## Section 328.3 Definitions.

For the purpose of this regulation these terms are defined as follows:

a) The term "waters of the United States" means

(1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

(2) All interstate waters including interstate wetlands;

(3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters:

(i) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or

(ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or

(iii) Which are used or could be used for industrial purpose by industries in interstate commerce;

(4) All impoundments of waters otherwise defined as waters of the United States under the definition;

(5) Tributaries of waters identified in paragraphs (a)(1)-(4) of this section;

(6) The territorial seas;

(7) Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1)-(6) of this section. Waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of CWA (other than cooling ponds as defined in 40 CFR 123.11(m) which also meet the criteria of this definition) are not waters of the United States.

(b) The term "wetlands" means those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas.

(c) The term "adjacent" means bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-

DEFENDANT'S DEPOSITION EXHIBIT 25

made dikes or barriers, natural river berms, beach dunes and the like are "adjacent wetlands."

(d) The term "high tide line" means the line of intersection of the land with the water's surface at the maximum height reached by a rising tide. The high tide line may be determined, in the absence of actual data, by a line of oil or scum along shore objects, a more or less continuous deposit of fine shell or debris on the foreshore or berm, other physical markings or characteristics, vegetation lines, tidal gages, or other suitable means that delineate the general height reached by a rising tide. The line encompasses spring high tides and other high tides that occur with periodic frequency but does not include storm surges in which there is a departure from the normal or predicted reach of the tide due to the piling up of water against a coast by strong winds such as those accompanying a hurricane or other intense storm.

(e) The term "ordinary high water mark" means that line on the shore established by the fluctuations of water and indicated by physical characteristics such as clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas.

(f) The term "tidal waters" means those waters that rise and fall in a predictable and measurable rhythm or cycle due to the gravitational pulls of the moon and sun. Tidal waters end where the rise and fall of the water surface can no longer be practically measured in a predictable rhythm due to masking by hydrologic, wind, or other effects.

### Section 328.4 Limits of jurisdiction.

(a) Territorial Seas. The limit of jurisdiction in the territorial seas is measured from the baseline in a seaward direction a distance of three nautical miles. (See 33 CFR 329.12)

(b) Tidal Waters of the United States. The landward limits of jurisdiction in tidal waters:

(1) Extends to the high tide line, or

(2) When adjacent non-tidal waters of the United States are present, the jurisdiction extends to the limits identified in paragraph (c) of this section.

(c) Non-Tidal Waters of the United States. The limits of jurisdiction in non-tidal waters:

(1) In the absence of adjacent wetlands, the jurisdiction extends to the ordinary high water mark, or

(2) When adjacent wetlands are present, the jurisdiction extends beyond the ordinary high water mark to the limit of the adjacent wetlands.

(3) When the water of the United States consists only of wetlands the jurisdiction extends to the limit of the wetland.

### Section 328.5 Changes in limits of waters of the United States.

Permanent changes of the shoreline configuration result in similar alterations of the boundaries of waters of the United States. Gradual changes which are due to natural causes and are perceptible only over some period of time constitute changes in the bed of a waterway which also change the boundaries of the waters of the United States. For example, changing sea levels or subsidence of land may cause some areas to become waters of the United States while siltation or a change in drainage may remove an area from waters of the United States. Man-made changes may affect the limits of waters of the United States; however, permanent changes should not be presumed until the particular circumstances have been examined and verified by the district engineer. Verification of changes to the lateral limits of jurisdiction may be obtained from the district engineer.

## PART 329 - DEFINITION OF NAVIGABLE WATERS OF THE UNITED STATES

Sec.
329.1 Purpose.
329.2 Applicability.
329.3 General policies.
329.4 General definitions.
329.5 General scope of determination.
329.6 Interstate or foreign commerce.
329.7 Intrastate or interstate nature of waterway.
329.8 Improved or natural conditions of the waterbody.
329.9 Time at which commerce exists or determination is made.

329.10 Existence of obstructions.

329.11 Geographic and jurisdictional limits of rivers and lakes.

329.12 Geographic and jurisdictional limits of oceanic and tidal waters.

329.13 Geographic limits: shifting boundaries.

329.14 Determination of navigability.

329.15 Inquiries regarding determinations.

329.16 Use and maintenance of lists of determinations.

Authority: 33 U.S.C. 401 et seq.

## Section 329.1 Purpose.

This regulation defines the term "navigable waters of the United States" as it is used to define authorities of the Corps of Engineers. It also prescribes the policy, practice and procedure to be used in determining the extent of the jurisdiction of the Corps of Engineers and in answering inquiries concerning "navigable waters of the United States." This definition does not apply to authorities under the Clean Water Act which definitions are described under 33 CFR Parts 323 and 328.

## Section 329.2 Applicability.

This regulation is applicable to all Corps of Engineers districts and divisions having civil works responsibilities.

## Section 329.3 General policies.

Precise definitions of "navigable waters of the United States" or "navigability" are ultimately dependent on judicial interpretation and cannot be made conclusively by administrative agencies. However, the policies and criteria contained in this regulation are in close conformance with the tests used by Federal courts and determinations made under this regulation are considered binding in regard to the activities of the Corps of Engineers.

## Section 329.4 General definition.

Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity.

## Section 329.5 General scope of determination.

The several factors which must be examined when making a determination whether a waterbody is a navigable water of the United States are discussed in detail below. Generally, the following conditions must be satisfied:

(a) Past, present, or potential presence of interstate or foreign commerce;

(b) Physical capabilities for use by commerce as in paragraph (a) of this section; and

(c) Defined geographic limits of the waterbody.

## Section 329.6 Interstate or foreign commerce.

(a) Nature of commerce: type, means, and extent of use. The types of commercial use of a waterway are extremely varied and will depend on the character of the region, its products, and the difficulties or dangers of navigation. It is the waterbody's capability of use by the public for purposes of transportation of commerce which is the determinative factor, and not the time, extent or manner of that use. As discussed in Section 329.9 of this Part, it is sufficient to establish the potential for commercial use at any past, present, or future time. Thus, sufficient commerce may be shown by historical use of canoes, bateaux, or other frontier craft, as long as that type of boat was common or well-suited to the place and period. Similarly, the particular items of commerce may vary widely, depending again on the region and period. The goods involved might be grain, furs, or other commerce of the time. Logs are a common example; transportation of logs has been a substantial and well-recognized commercial use of many navigable waters of the United States. Note, however, that the mere presence of floating logs will not of itself make the river "navigable"; the logs must have been related to a commercial venture. Similarly, the presence of recreational craft may indicate that a waterbody is capable of bearing some forms of commerce, either presently, in the future, or at a past point in time.

(b) Nature of commerce: interstate and intrastate. Interstate commerce may of course be existent on an intrastate voyage which occurs only between places within the same state. It is only necessary that goods may be brought from, or eventually be destined to go to, another state. (For purposes of this regulation, the term "interstate commerce" hereinafter includes "foreign commerce" as well.)